Glenn and Kennedy *vs.* Fowler.—1836.

---

JOHN GLENN AND JOHN P. KENNEDY *vs.* FRANCIS M. FOWLER AND OTHERS.—*December,* 1836.

The great purpose and object of a court of equity in assuming jurisdiction to restrain proceedings at law, is to afford a more plain, adequate and complete remedy for the wrong complained of than the party can have at law.

Where a statute has made provision for all the circumstances of a particular case, no relief in equity can be afforded, although the provisions of the statute may conflict with the notions of natural equity and justice entertained by a court of equity.

The several acts of assembly erecting the system which exists in *Baltimore* city and county, in relation to insolvent debtors, has in the first instance, invested the commissioners with the sole and exclusive jurisdiction upon the subject of appointing permanent trustees; and over the exercise of that

power the court of Chancery can exert no control to supervise or reverse their appointment for any pretended error of judgment.

In actions of *replevin,* the proceedings with reference to the possession, are regulated with exact minuteness by the acts of assembly. Upon the return of the writ, the court is commanded to entertain the question of possession, as a preliminary question altogether independent of the title ; and to return the property to the defendant, unless it shall appear that his possession was forcibly or fraudulently obtained, or that the possession first being in the plaintiff, was got or obtained by the defendant without proper authority or right derived from the plaintiff. On this preliminary question the whole matter of fraud may be investigated as fully as in a court of Chancery.

Courts of equity have sometimes interposed to prohibit proceedings at law, upon the ground that having possessed itself of the general subject, by an application for its aid, to compel a disclosure or for the exercise of some other admitted jurisdiction, it will dispose of the whole matter and thus avoid a multiplicity of suits.

APPEAL from *Chancery.*

On the 22d November, 1836, *Francis M. Fowler, Samuel Poultney, David U. Brown,* and *Ann Poultney,* administratrix of *Thomas Poultney,* filed their bill in chancery, charging that in the year 1832, *Samuel Poultney* and *William M. Ellicott* entered into a co-partnership in the *city of Baltimore,* as bankers, under the style of *Poultney, Ellicott & Co.* engaged in business and contracted debts still due. That in 1835, said firm constituted said *Fowler,* their attorney, to settle and adjust their business ; that he continued to act as such attorney until the 4th September, 1836, when said *Poultney* and *Ellicott* delivered to him a valid deed of assignment and transfer of all and singular the estate of the said firm in trust, to collect and make distribution equally among all the creditors of the said firm, and which deed was made an exhibit with the bill as a part thereof; that said *Fowler* accepted the trust, and is engaged in the due execution thereof; that on the 16th November, 1836, *William M. Ellicott* petitioned for and obtained a personal discharge under the insolvent laws of *Maryland ;* that said *Brown* was appointed his provisional trustee, and bonded as such; that afterwards the commissioners of insolvent debtors, on the application of persons representing themselves creditors of *Poultney,*

*Ellicott & Co.* but whose alleged claims were not inserted in the schedule of said insolvent, appointed *John Glenn* and *John P. Kennedy*, permanent trustees for the creditors of said *Ellicott*, and that a very large majority of all the creditors whose claims are not disputed and contested, but are admitted by the said schedule, have recommended said *Brown* as permanent trustee, as will appear by the recommendation of said creditors in the schedule and papers of said insolvent herewith filed; that the said *Glenn* and *Kennedy*, as such trustees, have sued out of *Baltimore* county court a writ of *replevin*, returnable on the 2d January, 1837, against said *Poultney, Fowler* and *Brown*, to recover the various books of accounts of said firm of *Poultney, Ellicott & Co.* That the said *Ann Poultney*, administratrix, is a creditor of the said firm on their certificate of deposite for $25,000, and as such is advised she has a right to require that the said *Fowler* shall proceed in the execution of said trust according to the terms of said deed, and that chancery will protect the same; that the execution of the said writ of replevin will deprive the said *Fowler* of the possession of the books of said firm, and prevent certainly, until the return day of the writ, his executing the said trust; that the deed to *Fowler* is valid, and that if it could be questioned the said *Samuel Poultney* would then be entitled to the sole possession of said books, &c. Prayer for an injunction to prevent the execution of the *replevin*, and for *subpœna* for said *Glenn* and *Kennedy*, and for general relief.

The deed exhibited with the bill from *Samuel Poultney* and *William M. Ellicott*, was dated the 14th September, 1836, and conveyed to the said *Fowler*, in consideration of the sum of five dollars, " all and singular the property and estate, rights, credits, and effects of the firm of *Poultney, Ellicott & Co.* and all debts due said firm and securities therefor *in trust.*" That the said *Francis M. Fowler* shall and may sell and dispose of, lease and demise, transfer and assign in such manner and upon such terms as he may deem proper and just, all or any part of the estate, property, rights,

credits, or effects hereby conveyed and transferred, and the proceeds arising therefrom or benefits thereof, shall, after deducting all the expenses incident to this trust, and all counsellors' fees and other costs and charges incurred, or which may hereafter be incurred by the said co-partners, or either of them by reason of any suit or controversy pending, or which may be instituted in regard to the transactions of the said co-partnership, apply to the payment and satisfaction of the aforesaid debts of the said firm, and to pay and satisfy all or any of such debts of said *Poultney, Ellicott & Co.* either in the specific property or estate, rights, credits, and effects hereby conveyed or any part thereof, or by sale, exchange, or transfer, or assignment, and after the payment of all the said debts to re-convey to said partners the entire residue, if any there shall be, of said estate. And in case the said estate shall be insufficient to pay and satisfy in full all the said debts as aforesaid, then the said *Fowler,* after ascertaining all the debts which are truly and lawfully owing from the said firm, shall divide the same estate, effects, credits, and property, or the clear proceeds thereof, equally and rateably among the creditors to whom the said debts are so truly and lawfully owing; and moreover the said *Samuel* and *William,* do hereby empower the said *Fowler* to appoint one or more trustees in addition to himself, or independently of himself, he relinquishing his said trust, provided he shall deem it necessary for the more perfect execution of these presents, and provided that the said *Francis M. Fowler* shall not appoint such one or more additional trustees without the consent and approbation of the said *Samuel* and *William,* or the survivor of them previously obtained in writing, and shall appoint such person or persons as shall be nominated and approved by the said *Samuel* and *William,* or the survivor of them."

The recitals of this deed referred to the prior appointment of said *Fowler,* as their agent, to wind up the business of said firm—the dissolution of said firm and the design to distribute its funds rateably among the real creditors thereof.

The several exhibits referred to in the bill were filed with it.

On the 22d of November, 1836, the chancellor (*Bland*,) ordered the injunction as prayed.

After this the defendants, *Glenn* and *Kennedy*, filed their answer to the bill, and petitioned the chancellor without further notice to dissolve the injunction. This petition the chancellor dismissed, and the defendants took an appeal as well from the granting of the injunction as the dismissal of the petition.

The answers of the defendants not being considered by this court upon the appeal are omitted by the reporters.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, DORSEY, ARCHER, CHAMBERS, and SPENCE, Judges.

KENNEDY, for the appellants, contended:

That the chancellor erred in granting the injunction in this cause.

1. Because from the bill it was apparent that *W. M. Ellicott* and *Samuel Poultney* had become insolvent, and had taken the benefit of the insolvent laws, and that shortly before they had done so they had executed a deed of trust of all their property and effects to *Francis M. Fowler*, as trustee, which deed was in fraud of the insolvent laws, being designed to prevent the creditors of *Poultney* and *Ellicott* from nominating a trustee, as by the said laws they had a right to do.

2. Because the appellants as permanent trustees of the said *Poultney* and *Ellicott* were entitled to the possession of the books and papers of the said insolvents, not only by reason of the said deed above mentioned being fraudulent and void, but also notwithstanding that deed, supposing it to be good; their right to said books and papers being equal and concurrent with the right of any other trustee.

3. Because it did not appear by the bill that the said trustee had given any security for the execution of his trust, and that it was therefore improvident in the chancellor to issue

the injunction without requiring bond which he did not do. He cited : *Dorsey's Am. Law Insol.* 51. *Eckhardt, et al vs. Wilson,* 8 *Term Rep.* 141. *King (in aid of Braddock vs. Watson,) Cond. Exch. Rep.* 265. 4 *Conn. Rep.* 146, 155, 162, 172.

McMahon, on the same side.

This bill concedes us a *prima facie* case. Its equity rests upon a conflict of title. *Fowler* is in by deed. The appellants claim under the insolvent laws. The commissioners of insolvent debtors acted rightfully. *Williamson vs. Carnan,* 1 *Gill and John.* 185. They had the legal power of appointing trustees, and their judgment cannot be impeached collaterally.

Does the bill entitle chancery to interfere by injunction ? Where there is a dispute at law, injunction will only go to prevent irreparable injury, not on the ground of title alone. *Jerome vs. Ross,* 7 *J. C. R.* 322. Where there is a prompt and adequate remedy at law, chancery will not interfere. Irreparable injury here is not pretended. The sole injury alleged is a temporary one. No detriment to property is alleged. No more than suspicion at law of our title, and no reason shown why the property replevied may not be restored specifically. Where is such a jurisdiction to terminate? What action of replevin can go on if such a bill may arrest it ? No case of conflict of title in which injunction will not be granted. The grant of this injunction is against the analogies of the law to stay legal process. It never interferes except to preserve the subject matter of the dispute. But here there is an adequate remedy at law. At the return of the writ the defendant in *replevin* may move for restitution and may have it if entitled.

The parties claim title in several distinct rights.

*Ann Poultney,* as a general creditor.

*Samuel Poultney,* as the solvent partner of the house.

*D. U. Brown,* as the provisional trustee of *Ellicott,* the insolvent.

*Fowler,* under the deed to him.

The defendants are permanent trustees under the insolvent law.

That system has several objects—equal distribution—trustees chosen on a recommendation of majority of creditors—this is ancillary to an equitable distribution of assets—power to remove trustees on application of creditors— trustees appointed and removable on motion of creditors—act of 1820, ch. 193.

This trustee, *Fowler,* was not appointed by creditors—is not removable by them—is competent to discharge himself—may convey the estate to another. His office is wholly at war with the insolvent system. This trustee is the agent of the debtors—a fraud may be kept up in perpetuity—he may appoint a successor—that successor guilty of a fraud may appoint another. As to what assignments are good against dissentient creditors. If made, coupled with condition of release for a portion of the debt, it is void. Such deeds are only valid on unconditional surrender of the property. This deed is at war with the policy of the law, and cannot be sustained. The grantor about to become an insolvent debtor, can do nothing inconsistent with that relation without the privity of his creditors. He cannot strip himself of his property, and in a state of nudity leap into the gulf of insolvency.

Every such deed is a fraud on the principles of the common law. Every deed made in contemplation of bankruptcy is a fraud, though for the equal benefit of creditors, as it takes from the creditor the appointment of assignees ; and where you find the same elements in any other case the deed is fraudulent and void.

Such a deed validated is a premium to debtors to violate the insolvent law. Does any man doubt between the efficiency of trustees selected by debtors or creditors?

CHAMBERS, Judge, delivered the opinion of the court.

The court have to regret that in this case they have not

had the benefit of an argument on the part of the appellees; but they have been compelled in obedience to the imperative rules of law to decide the case without such advantage.

They do not find it to be necessary, however, to express an opinion upon several points presented by the appellants' counsel, and it is their purpose to avoid the decision of any matter not immediately demanding their notice.

The great purpose and object of a court of equity, in assuming jurisdiction to restrain proceedings at law, is to afford a more plain, adequate, and complete remedy for the wrong complained of than the party can have at law. 1 *Story Com.* 53.

The rule which confers the chancery jurisdiction in such a case is as well established and as much entitled to observance as the rule which clothes the same tribunal with jurisdiction, in cases of fraud, accident, or of trust, but both are rules of general and not universal application.

One of the excepted cases is, where a statute has made provision for all the circumstances of a particular case; no relief in equity can be afforded in such case, although the provisions of the statute may conflict with the notions of natural justice and equity entertained by a court of Chancery. 3 *Black Com.* 432. *Fonbl. B.* 1, *ch.* 1 *sec.* 3.

The material grounds assumed in this bill and on which the injunction is asked are, that the appointment of the appellants to be permanent trustees has been irregularly made, on the recommendation of those who ought not to have been regarded by the commissioners of insolvent debtors as creditors; that the court of law could not order a restitution of the property replevied till their next session; and that the trust created by the deed to *Fowler*, one of the appellees, would in the interim be obstructed to the prejudice of the *cestui que trusts*.

The several acts of assembly erecting the system which exists in *Baltimore*, in relation to insolvent debtors, has in the first instance invested the commissioners with the sole and exclusive jurisdiction upon the subject of appointing a permanent trustee. Over the exercise of that power the

chancery court can exert no control to supervise or reverse their appointment for any pretended error of judgment. The positive provisions of the statute are imperative. The chancery court can claim no jurisdiction then on that ground.

The proceedings in the action of *replevin,* so far as relates to the possession of the property involved in the suit, are regulated with exact minuteness by the acts of assembly. A bond is required before the plaintiff is permitted to remove the property from the possession of the party holding it. The very object and purpose of the bond is to protect the rightful possessor against all loss or damage he may sustain by reason of the interruption to his possession. 6 *Gill and John.* 453. 3 *Gill and John.* 247. The court at the return of the writ is commanded to entertain the question of possession as a preliminary question, independent entirely of the title, and to return the property to the defendant in *replevin,* unless it shall appear that his possession was forcibly or fraudulently obtained, or that the possession first being in the plaintiff was got or retained by the defendant, without proper authority or right derived from plaintiff. The whole matter of fraud may, on that preliminary inquiry, be investigated as fully as in a court of Chancery, and the relief administered is precisely what is here claimed ; that is, by awarding the possession of the property. The sole advantage then, which the applicant to a court of Chancery can expect, is to have that relief afforded him, a few weeks sooner than it would be, in the court of law, to which by the express terms of the statute the investigation and decision of the matter is confided, and where too, full indemnity is secured for any intermediate injury by the *replevin* bond. We do not think that the delay in a case like this is such a defect of ample and complete remedy as the rule contemplates. If it did it would be difficult to say in what case the court of Chancery might not interpose its prompt aid to adjust disputed questions on the ground of defect in the courts of law.

The occasion did not exist in the case, upon which courts of equity have sometimes interposed to prohibit proceedings

at law, on the ground that having possessed itself of the general subject, by an application for its aid, to compel a disclosure, or for the exercise of some other admitted jurisdiction, it will dispose of the whole matter and thus avoid a multiplicity of suits.   No disclosure is sought; and so far from being intended to restrain a court of law from exercising jurisdiction over a subject previously depending in chancery, thereby making unnecessary litigation, it proposes by the means of a second suit to be prosecuted in chancery, to arrest the party plaintiff in his then pending suit at law, in which the complainant in chancery could have had the very same relief asked by his bill.

There are doubtless great difficulties in prescribing the precise boundary at which to limit the interposition of a court of equity, to restrain the assertion of doubtful rights, in a manner to produce irreparable injury or to preserve property more effectually, while it is the subject of litigation, or to afford a more perfect and appropriate remedy.   Yet we do not doubt that it would be an extension of its jurisdiction, not authorized by principle or authority, to apply it to a case like the present, where the party can have at law a remedy as effectual and complete, as clear and as certain as in a court of equity.   *Mit. Ple.* 123.

The order and injunction is therefore reversed with costs.

ORDER REVERSED.