HARRIET COOKE *v.* ISRAEL COOKE, Executor of Daniel Cooke.

*Decided December 17th, 1868.*

DECLARATIONS OF PARTIES ; IMPEACHING THEIR DEEDS. ADMINIS- TRATORS AND EXECUTORS ; ASSETS ; WHAT ARE ; *sperate* AND DESPER- ATE DEBTS ; LIABILITY ; NEGLIGENCE ; INTEREST ; QUESTION FOR ORPHANS' COURT. ORPHANS' COURT ; ISSUES TO COURT OF LAW ; QUESTIONS CONSIDERED. PRACTICE IN COURT OF APPEALS ; BILLS OF EXCEPTION ; SEVERAL CONNECTED ; WHEN NO REVERSAL, ALTHOUGH ERROR OF LAW APPARENT ; WHOLE RECORD CONSIDERED. WITNESSES ; COMPETENCY.

The declarations of a grantor to a bill of sale, made long after the ex- ecution of the instrument, and introduced for the purpose of impeach-

ing or giving to it an effect different from that plainly indicated by the words used therein, are inadmissible as evidence.  (a)      p. 550

But where a deed is impeached by a stranger, on the ground of fraud, the declarations of the parties to it, made about the time of its execution, are admissible as part of the res gestæ, to explain the intention of the parties and the character of the instrument.  (aa)      p. 550

*Upon a proceeding instituted by A. to ascertain whether **539** B., the executor of C., had come in possession of assets belonging to his testator, and to what amount, and to compel him to account for such as had come into his hands, B. is a competent witness, under the Act of 1864, ch. 109, to show that he had advanced money to his testator. (b)      p. 551

In determining whether debts due to a testator, and which came into the hands of his executor, are assets to be accounted for by him, regard must be had to their character—whether they are sperate or desperate, and if the former, whether they have been collected, or lost by the default of the executor.  (c)      p. 551

Where upon issues sent from an Orphans' Court, to a Court of Law, the jury are simply required to determine whether assets have come to the hands of an executor, and if so, to what amount, it is incompetent for the jury, if they find assets, to award interest thereon.  Upon their finding assets, the question of interest is remitted to the Orphans' Court upon proper proceedings to be instituted therein.      pp. 551-552

Upon issues sent from an Orphans' Court to a Court of Law for trial, the province of the latter is simply to submit to the jury the determination of the issues, without reference to the question whether they were properly presented by the proceedings in the Orphans' Court; and any evidence legally admissible and pertinent to the issues, should be submitted to the jury.  (d)      p. 552

While it is well settled that unless bills of exception are connected by express reference to each other, or by the use of words which fairly import such connection, they will be considered as separate and distinct, and the court will look only to the evidence set out in each exception, yet when there is error of law sufficiently apparent in an exception to

---

(a)   See note (d) to McDowell v. Goldsmith, 6 Md. 319-320.   See also Dudley v. Hurst, 67 Md. 45;  Dodge v. Stanhope, 55 Md. 121;  Reese v. Reese, 41 Md. 558.

(aa)   See also Bank v. Copeland, 18 Md. 305.

(b)   See Diffenbach v. Vogeler, 61 Md. 379;  cf. also Leiter v. Grimes, 35 Md. 438.

(c)   See Seighman v. Marshall, 17 Md. 550.   In the inventory of a decedent's estate, the debts due the deceased are not properly included; see Handy v. Collins, 60 Md. 239.

(d)   Where issues are sent to a court of law, the practice is for the verdict and the costs in the latter court to be certified to the Orphans' Court, leaving it to enter the proper judgment;  Browne v. Browne, 22 Md. 103.

warrant a reversal, unless it should appear that the appellant was not injured by the ruling of the court below, the appellate court in determining this question, will consider all the evidence in the record, and will not confine itself to that set out in the particular exception.  (*e*)

pp. 552-553

Appeal from the Superior Court of Baltimore City.

In this case a petition was filed by the appellant on the 10th of February, 1866, in the Orphans' Court of Baltimore City. After alleging the death of Daniel Cooke in September, 1857, and his execution of a last will prior to his decease, by which she and her mother were made legatees of all his estate after payment of his debts, and the appointment of the appellee, his brother, as executor, she charged that he had become **540** possessed *of personal property in a coach factory on Calvert street, Baltimore, to the amount of some $5,000, and book accounts and claims to the amount of some $2,000, belonging to the said Daniel; and further, that he had never made any return of the same to the Orphans' Court of Baltimore City. She admitted, however, that the appellee claimed to hold the said personal property on Calvert street by virtue of a bill of sale, a copy of which, marked J. C., was filed with the petition, but she charged that said instrument was only intended as a mortgage to secure the payment of $1,500, which was paid by . Daniel prior to his death.  She alleged the death of her mother, in 1863, intestate, leaving children and descendants of children, all of whom, with the exception of John Cooke, one of the appellee's securities, had assigned their interests in the estate of her mother to her.  The petition prayed that the appellee might be required to return a correct inventory of all the property, and a correct list of all the book accounts and claims, collected or uncollected, to be duly administered under the direction of the court, and that the instrument of writing, purporting to be a bill of sale, might be declared null and void, from having been paid, and for general relief.  Subsequently, the appellee appeared and answered the petition.  He admitted the death

(*e*)  See *Hopkins v. Kent,* 17 Md. 119; *B. & O. R. R. Co. v. State,* 30 Md. 54; *Cooper v. Holmes,* 71 Md. 25; *Rowe v. B. & O. R. R. Co.,* 82 Md. 493, as to several bills of exceptions, connected by apt words of reference.

of his brother Daniel, the execution of his last will, and the issue of letters testamentary to himself, but he denied that, as such executor, he had received the property on Calvert street, and that his brother died the owner thereof, but claimed the same as his own, under the bill of sale referred to, and denied that said bill of sale was intended as a mortgage, and excepted to the jurisdiction of the Orphans' Court in such case. He offered to produce in court all the books, papers and accounts, but stated that he had used every means, both by his own exertions and that of a competent collector, to realize the claims, but had never been able to collect one dollar of them. He alleged that, for a series of years before the death of his brother, he was in the habit of furnishing him money to carry on his business *as a coach-maker; that at the time of his death **541** he was largely indebted to him, the respondent, and that since his death he had paid debts contracted by his brother, and that there was now due and owing to him in the neighborhood of $2,300. He admitted the death of the petitioner's mother, but knew nothing of the assignment from her heirs at law to the petitioner.

After the coming in of this answer, the appellant filed another petition, praying that the following issues might be made up and transmitted to the Superior Court of Baltimore City, and the same was accordingly done.:

1. Did Israel Cooke, as executor of Daniel Cooke, come into possession of assets belonging to the estate of Daniel?

2. If there were such assets, what was the amount thereof?

3. Was the instrument of writing, marked Exhibit J. C., intended to operate only as a mortgage for the security of the sum of fifteen hundred dollars as therein named?

4. If the Exhibit J. C. were intended to operate as a mortgage only, has the sum of fifteen hundred dollars, intended to be secured thereby, ever been paid?

The jury found a verdict for the defendant upon all the issues.

The following exceptions were taken by the plaintiff at the trial below.

First Exception.—The plaintiff offered in evidence the declaration of Daniel immediately preceding his death, that he had told his mother, " there would be three to four thousand dollars

coming to her and her daughter, after paying his creditors," and then proposed to give in evidence other declarations, made shortly before his death, to the effect that " he had used the name of Israel in his business without the benefit of a dollar from him, and that if he attempted to sell his effects after his death, to appeal to his brother John, who would prevent him." To the admission of these declarations the defendant objected, and the court (Martin, J.,) sustained the objection; the plaintiff thereupon excepted.

**542**, *Second Exception.—The defendant offered evidence, showing that he furnished all the money to carry on the coach-factory and to pay the notes that were given for carrying on the same, a number of which were offered in evidence. To the admission of this evidence, as also to all that relating to transactions between the defendant and Daniel Cooke, the plaintiff objected, but the court overruled the objection and allowed the same to go to the jury. The plaintiff excepted.

Third Exception.—The plaintiff offered five prayers, but subsequently withdrew the first; the others are as follows:

2. That if the jury shall find from the evidence that the paper writing offered in evidence by the defendant, purporting to be a bill of sale, was intended as a security for the loan of money by the defendant to Daniel Cooke, or any such indebtedness or liability in any way incurred, or to be incurred by the defendant, on account of the said Daniel Cooke, then they must find as assets under the first and second issues in this cause, all the property that they may find was in the coach factory on Calvert street at the time of the death of said Daniel Cooke, or its value, without deduction for any indebtedness whatever by the said Daniel Cooke to the said defendant, if they shall believe there was any such indebtedness.

3. That if the jury shall find from the evidence that there were debts due to Daniel Cooke, which debts came into the hands of the defendant, then they must find all such debts to be assets, and that they cannot make any deduction from such assets on account of any money paid by the defendant for said Daniel Cooke, or that was due to the defendant by said Daniel Cooke.

4. That if the jury shall find from the evidence that the said Daniel Cooke was carrying on the business of coach making,

as principal or owner, in the house on Calvert street, previous to the 18th of September, 1856, the date of the bill of sale offered in evidence by the defendant, (if they shall find there was such a bill of sale,) and shall also find that the said Daniel continued in possession and carried on the \*business of coach mak- **543** ing in said house, after said date, in his own name and by his direction, in the same manner as he had done previously thereto; that he was dealt with and recognized in the community as such principal or owner, and that in the transaction of said business, materials on hand were constantly being wrought up into work and sold, and new materials and new work substituted in their stead; and shall find that, at the death of said Daniel Cooke, there were materials on hand and finished work wrought out of materials that were not included in said bill of sale, then, although they may find the defendant furnished certain money to carry on the business and became responsible to pay, and did pay certain indebtedness incurred on account of the same, they must find all such substituted, or other property, or its value, that they may find was not included in said bill of sale, as assets under the first and second issues in this cause, without any deduction for payments by the defendant, (if any such they shall find,) with interest thereon from the date of sale, as testified to: provided they shall believe from the evidence that the said money furnished and responsibility incurred (if they shall find the same) was furnished as a loan to said Daniel, and the said liability incurred as security for him, and not as the principal or owner of said coach manufacturing business.

5. That if the jury shall find from the evidence there were any book accounts or debts collected by the defendant, that were owing to the said Daniel Cooke, they must find the same as assets under the issues in the cause, and add interest thereon from the time when they shall find the same were collected.

And the defendant offered the two following prayers:

1. That if the jury find from the evidence in the cause, that on the 18th of September, 1856, Daniel Cooke executed to the defendant the bill of sale of that date, offered in evidence, and that thereafter the defendant furnished the money and credit for carrying on the business referred to in the evidence, and

**544** that with such money and credit and the proceeds *of the goods and effects mentioned in said bill of sale, the carriages and other articles in the building referred to in the evidence, which were there at the death of Daniel Cooke, were purchased and constructed, then such articles were the property of Israel Cooke, and not assets belonging to the estate of Daniel Cooke, deceased.

2. That there is no sufficient evidence in the cause from which the jury can find that the bill of sale, offered in evidence and referred to in the third issue, was a mortgage, and not an absolute bill of sale, and therefore their verdict must be for the defendant on the third and fourth issues.

The court rejected the prayers of the plaintiff, and granted the first prayer of the defendant, with the following addition thereto: But if the jury shall find that the goods and effects in the factory, at the time of the death of Daniel Cooke, were not included in the said bill of sale, then they are to be considered by the jury as assets, unless they find to be true the facts stated in the preceding part of the prayer.

The court also rejected the defendant's second prayer, and gave the following instruction to the jury:

I instruct the jury that on the pleadings in this case, they are not at liberty to find that the instrument of writing, marked Exhibit J. C., was intended to operate only as a mortgage for the security of the sum of fifteen hundred dollars, and that their verdict on the third and fourth issues must be for the defendant.

To the refusal of the court to grant the prayers of the plaintiff, and also the instructions which it gave, the plaintiff excepted and the verdict being against her, she appealed.

The cause was argued before Bartol, C. J., Brent, Grason, Miller and Alvey, JJ.

*William Daniel,* for the appellant:

The declarations of Daniel Cooke, which were excluded by the court, were confirmatory of the testimony of all the other **545** *witnesses for the plaintiff, which went to prove that the coach factory belonged to Daniel and not to Israel Cooke. It also tended to establish the point that the bill of sale in question was intended as a security, and was not absolute. This

court has decided that the declarations of a grantor, in some cases may be received, when the effect is to impair the title of those claiming under him. And this is true of declarations made either before or after the execution of the paper. *McDowell v. Goldsmith,* 6 Md. 319, 338, 344; *Dorsey v. Dorsey,* 3 H. & J. 410, 426; *Curtis v. Moore,* 20 Md. 93; *Richards v. Swan,* 7 Gill, 374; *Willies v. Farley,* 14 E. C. L. 367.

The testimony of Israel Cooke, to prove that he furnished all the money to carry on the coach factory, and paid all the notes given for carrying on the same, and also the evidence of transactions between him and Daniel, being from a party litigant and in interest, was inadmissible under the Act of 1864, ch. 109, sec. 2, and the Act of 1868, ch. 116, sec. 1.

The defendant's first prayer, should not have been granted. First, because it was based almost entirely upon the testimony of Israel Cooke, as to transactions between him and Daniel Cooke, which ought to have been excluded. After submitting the factum of the bill of sale to the jury, it asked them to find " that thereafter the defendant furnished the money and credit for carrying on the same business referred to in the evidence, and that with such money and credit, and the proceeds of the goods and effects mentioned in said bill of sale, the carriages and other articles in the building, referred to in the evidence, were purchased and constructed, and if they so find, then such articles were the property of Israel Cooke." There is not a particle of testimony, outside of Israel Cooke's, to prove the above hypothesis. Secondly, because it took from the jury the terms upon which the said money was furnished, viz : whether on said Israel's account alone, *or as a loan to or security for Daniel.*

*And for the same reasons, the *fourth* prayer of the **546** appellant ought to have been granted.

A mortgagee of goods in a store has no interest in, or lien upon goods subsequently purchased out of proceeds of sale of those mortgaged, etc., and substituted in their stead. *Rose v. Bevan,* 10 Md. 466.

The instruction given by the court instead of the second prayer of the defendant, which it rejected, is based upon the ground that the averments of the petition were insufficient. On the contrary, the appellant submits that they were sufficient.

No mater how absolute a conveyance may be upon its face, if the intention is to take a security for a subsisting debt or for money lent, the transaction will be regarded as a mortgage; and specific allegations of fraud will not be necessary, where the same is admitted in the answer, or shown in proof, etc. *Artz v. Grove*, 21 Md. 456, 474, and cases there cited; *Bank of Westminster v. Whyte*, 1 Md. Ch. 539; *Hicks v. Hicks*, 5 G. & J. 76; *Seighman v. Marshall*, 17 Md. 550; *Ing v. Brown*, 3 Md. Ch. 522; *Farrell v. Bean*, 10 Md. 230; 2 Story's Eq. Jur. secs. 1018-1020. See also *Russell v. Southard*, 12 How. 139; and *Dougherty v. McColgan*, 6 G. & J. 275, as to what is a sufficient allegation of fraud.

The proceedings in the Orphans' Courts in matters of this kind, and their jurisdiction over them, are similar to proceedings and jurisdiction in chancery in such cases.

Orphans' Courts have full power to examine and decree upon all accounts, claims and demands, and to try questions of title between creditors or legatees and executors. Code of Pub. Gen. Laws, Art. 93, secs. 230, 231, 238, 239, 240, 249; *Spencer v. Reagan*, 9 Gill, 481.

An administrator is not allowed to retain for his own claim, or for any claim discharged by him, unless passed by the Orphans' Court. Code of Pub. Gen. Laws, Art. 93, secs. 97, 98.

**547** *For these reasons, therefore, the second prayer of the appellant ought to have been granted. The appellant's third prayer is based upon the ground that book accounts are assets. They are so regarded by the laws of Maryland, Code of Pub. Gen. Laws, Art. 93, secs. 239, 240, and are then placed in the same category as an inventory of personal property; and upon failure of the executor to return them, issues may be made up by the Orphans' Court and sent out. This is especially the case with all such accounts or debts as can be shown to have been collectible, with proper diligence, but have not been, for want of it. 2 Williams on Ex'rs, 1421, 1535, 1539, 1677; *Seighman v. Marshall*, 17 Md. 550; *Mara v. Quin*, 6 Term, 10; Went.'s Ex'r, 312. *Crosse v. Smith*, 7 East, 258.

There was evidence in the case to go to the jury, that accounts of Daniel Cooke were good, and might have been collected.

COOKE *v.* COOKE.—29 Md. 538      547-548

The appellant's fifth prayer was based upon the ground that if any such accounts as had been before named, had been collected and turned into money, the defendant was chargeable therewith as assets, which was also refused by the court. To this point there was clear proof to go to the jury. There is no principle of law clearer than that debts collected by an administrator are assets with which he is chargeable. 2 Williams' Ex'rs, 1421, 1435; *Seighman v. Marshall,* 17 Md. 550; *De Valengin v. Duffy,* 14 Pet. 282, 290, 291, marg.; Abbott's Nat. Dig. 491; *United States v. Drenner,* Hempst. 320, to the effect that all kinds of property left by deceased are assets in hands of administrator.

The court erred, therefore, in refusing this prayer.

*Robert Lyon Rogers* and *William Pinkney Whyte,* for the appellee:

The declarations made by Daniel, long after the making of the bill of sale, and contradictory thereof, were properly excluded. *Powles v. Dilley,* 9 Gill, 234.

*There is nothing in the Act of 1864, ch. 109, sec. 2, **548** in conflict with the admission by the court of the testimony of Israel Cooke, showing his ownership of the personal property in question; his payment of the liabilities of the coach factory, both before and after Daniel's death, and the production of the notes paid by him, and therefore the court was correct in admitting this testimony.

After the evidence had been closed on both sides, the defendant offered the prayer, designated as his first prayer, which being granted by the court, covered the whole case, and if correct, renders it unnecessary to pass upon the prayers of the plaintiff.

The first prayer of the appellee was correct. The finding of the bill of sale, covered all the goods, which had been assigned in the bill of sale, and which remained in specie at the death of Daniel, and the other goods, in the factory, at the death of Daniel, if purchased from the proceeds of the sale of any of the goods which had been described in the bill of sale, in substitution thereof, or had been obtained with the money or on the credit of Israel Cooke, clearly belonged to him and were not assets of Daniel Cooke. Israel was not a mortgagee, but a *bona fide* grantee of all the personal property in the factory.

The court correctly rejected all the plaintiff's prayers.

The plaintiff's third and fifth prayers proposed to the jury to find debts or uncollected claims, sperate or desperate, as assets. The assets referred to in the issue meant *statutable* assets and not debts. See Code of Pub. Gen. Laws, Art. 93, secs. 220, 221, 222. Generally debts are only considered as assets, *when collected,* although for any sperate debts due the deceased, which may have *been lost by negligence* of the defendant in failing to collect them, he would be chargeable, as assets. But there was no proof of the loss of any sperate debt. *Seighman v. Marshall,* 17 Md. 571.

The plaintiff's first prayer was withdrawn, and his second prayer was rejected, because there was neither an allegation of **549** *fraud nor mistake in the petition, nor any admission in the answer that the paper was different from what it was the intention of the parties to make it, and on the pleadings, the jury were compelled to find for the defendant on the third and fourth issues. *Hertle v. McDonald,* 2 Md. Ch. 138; *Wesley v. Thomas,* 6 H. & J. 25; *Bank of Westminster v. Whyte,* 1 Md. Ch. 539; *Watkins v. Stockett,* 6 H. & J. 444.

The plaintiff's fourth prayer was properly rejected, because there was no evidence to justify the granting of such a prayer, but on the contrary, it was calculated only to mislead the jury. But this court, in view of the established practice in Maryland, should not reverse the rulings of the court below, upon the fourth exception, which does not set out the whole evidence. The other bills of exception are not incorporated and made part of this, by *express terms,* which is the rule in Maryland. *Gist v. Cockey,* 7 H. & J. 134; *Burtles v. State,* 4 Md. 275; *Armstrong v. Thruston,* 11 Md. 157.

Grason, J., delivered the opinion of the court.

In a proceeding in the Orphans' Court of Baltimore City, between the parties to this cause, four issues were framed and sent to the Superior Court of Baltimore City for trial; the first and second of which involved the inquiry, whether assets of Daniel Cooke had come into the possession of the defendant, the appellee in this cause, and if so, to what amount? and the third and fourth, whether the instrument of writing, marked

J. C., and filed with the appellant's petition in the Orphans' Court, was intended, by the parties thereto, to operate as a mortgage only, and if so, whether it had been paid? At the trial of the cause, several witnesses were examined, and exceptions were taken by the appellant to the rulings of the court below in refusing to admit as evidence certain declarations and statements of Daniel Cooke as to the balance of money that would be left for his mother and sister, after the *pay- **550** ment of his debts, and as to the business relations existing between himself and the appellee; to the ruling of the court that Israel Cooke, the appellee, was a competent witness, and permitting his evidence to go to the jury; and also to the rejection of the appellant's prayers, and to the instructions which the court gave to the jury.

The declarations of Daniel Cooke, which were sought to be given in evidence, were made long after the execution of the paper writing, marked J. C., by him, and were offered for the purpose of impeaching or giving to it an effect different from that plainly indicated by the words used therein, and they were, therefore, properly rejected by the court. *Powles v. Dilley,* 9 Gill, 234.

It is true that, where a deed is impeached by a stranger to it, upon the ground of fraud, the declarations of the parties to it, made about the time of its execution, are admissible as part of the *res gestæ*, for the purpose of explaining the intentions of the parties and the character of the instrument. To this extent only do the authorities cited by the counsel of the appellant go; but we know of no case which authorizes a party, or those claiming under him, to give his declarations in evidence for the purpose of impeaching or varying his own deed.

The Act of 1864, ch. 109, sec. 2, prohibits a party to a contract, or cause of action, from testifying where the other party is dead; and it was contended that the court below erred in permitting Israel Cooke to testify, Daniel Cooke, the other party to the paper writing, marked J. C., being dead. This was not a suit upon that paper or contract, but it was a proceeding, instituted by the appellant, to ascertain whether the appellee had come into possession of assets of Daniel Cooke, and if so, to what amount, and to compel him to account for such as had come into his hands. Israel Cooke testified to hav-

ing advanced moneys to Daniel, but said nothing regarding the character of the instrument of writing above referred to, or **551** of the intentions of the parties *thereto at the time of its execution. He was, therefore, a competent witness. The Act of 1868, ch. 116, cited by the counsel of the appellant, had not been passed at the time of the trial below, and of course could not apply to the case, even had it contained provisions prohibiting a party from testifying under such circumstances.

The court below rejected the four prayers of the appellant, granted the appellee's first prayer, with an amendment, and gave an instruction to the jury instead of that asked by the appellee's second prayer; and to these rulings and instructions the third and last exception was taken. The first prayer of the appellant was withdrawn.

There was proof to show that, at the time of Daniel Cooke's death, there was some property in the coach shop, carried on by him in his lifetime, which belonged to other parties at the time of his death, and was claimed by and delivered to them, either before or at the time of the sale made by the appellee. It would, therefore, have been error to have instructed the jury that, if they believed Exhibit J. C. was intended to operate as a mortgage, they must find as assets, on the first and second issues, *all* the property which was in the coach-shop at the time of Daniel Cooke's death. For this reason the appellant's second prayer was properly rejected.

The third prayer was also properly rejected, because it erroneously asserted, as a legal proposition, that all debts, which came into the appellee's hands, were assets without reference to whether they were sperate or desperate, or, if the former, whether they had been collected or lost by the default of the executor.

The fourth and fifth prayers were also properly rejected, because they required the jury, if they found assets, to allow interest thereon from the date of the sale made by the appellee. This it was not competent for the jury to do. The issues they had to determine were simply, whether assets had come to the hands of the appellee, and if they had, to what **552** *amount? Had the jury found assets, then, by the proper proceeding in the Orphans' Court, the appellee could have been charged with interest upon the assets so found, pro-

vided the facts were shown which would authorize a charge for interest against him.

The two instructions given by the court, in lieu of the appellee's first and second prayers, cannot receive the assent of this court. The first did not submit to the consideration of the jury the third issue, and the second, in direct terms, decided that the jury was not at liberty to consider that issue under the pleadings, and that they must find for the appellee on the third and fourth issues. These issues were sent from an Orphans' Court to a court of law for trial; the latter court had nothing to do with the petition and answer upon which the issues were framed. Its province was simply to submit to the jury the determination of the issues without reference to the question whether they were properly presented by the proceedings in the Orphans' Court.

The third issue presented the direct question, whether the paper, marked J. C., was a mortgage only; and the fourth was, if said paper was a mortgage only, whether the money, thereby secured to be paid, had ever been paid. These issues, as well as the first and second, were sent to the Superior Court to be determined by a jury for the information and guidance of the Orphans' Court; they were properly presented, and, therefore, any evidence, legally admissible and pertinent to the issues, should have been permitted to go to the jury, and it was manifest error in the court to withdraw either of them from their consideration.

But it has been contended, on behalf of the appellee, that this court cannot reverse on the third exception, because it does not set out the whole evidence. It is, no doubt, well settled that, unless bills of exception are connected by express reference to each other, or by the use of words which fairly import such connection, they will be considered as separate and distinct, and the court will look to and consider only *the evidence set out in each exception. *Gist v. Cockey*, **553** 7 H. & J. 134; *Burtles v. State*, 4 Md. 275; *Armstrong v. Thruston*, 11 Md. 157. But the rule laid down in those cases, does not apply to the case under consideration. In this case, there is error of law sufficiently appearing in the exception now under consideration, taken by itself, for which this court must reverse, unless it appears that the appellant was not injured

thereby.   To determine this, the court must look at and consider all the evidence in the record, and is not confined to that which is set out in the particular exception which the court has been considering.

For the reasons we have assigned, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed and procedendo awarded.*