(Decided 14th March, 1872.)

---

FRANCIS B. GROFF, Executor of ABRAHAM GROFF, deceased, and others, *vs.* EDWIN ROHRER.

*When equity will not Reform a contract for Mistake or ignorance—Voluntary conveyance by Husband to wife—Resulting Trust—Parol testimony to alter or explain a Written instrument—Res gestæ—Evidence.*

Mistake or ignorance of facts in parties, is a subject for relief where it constitutes a material ingredient in the contract of the parties, and disappoints their intention by a mutual error, or where it is inconsistent with good faith.

But where each party is ignorant, and there is no concealment of facts, which the other party has the right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral is treated as laying no foundation for equitable interference.

Where a husband executes a voluntary conveyance to his wife without qualification or reservation, equity will not presume a constructive trust in his favor.

On the 28th of April, 1858, Abram Groff and Susan, his wife, conveyed a tract of land for the expressed consideration of $1000 to Amon Richards; and, on the following day, Amon Richards and wife re-conveyed the tract for the same consideration to Susan Groff. These conveyances were prepared by Richards at the request of Abram Groff, for the purpose

of conveying the property to Susan Groff, his wife. At the same time Richards prepared a will, which was duly executed by Susan Groff, and consented to in writing by her husband, devising the same tract of land to her husband, Abram Groff for his natural life, and at his death to Edward Rohrer her son by a former marriage. Susan Groff died before her husband. He died in 1862, leaving a will in which he declared that by a mistake of the person (Richards) who prepared the above mentioned deeds and will, they did not carry out his intention which was to convey only a life estate to his wife, and directed proceedings to be instituted to set aside said deeds. For this purpose suit was brought by his executor and devisees. The bill alleged the mistake, charged fraud and undue influence on Susan Groff and Edwin Rohrer in procuring the conveyances, and prayed the cancellation of the deeds, and a decree of the Court that Susan Groff and Edwin Rohrer, the defendants, held the property subject to a resulting trust in favor of Abram Groff and his devisees. The testimony of Richards was taken showing that no valuable consideration passed between the parties to the deeds; and that of N. Lloyd and F. B. Groff, in reference to the general character of the relations between Abram Groff and his wife. HELD:

1. That no resulting trust will be presumed in favor of Abram Groff and his devisees.

2. That the declarations of Abram Groff contained in his will were inadmissible in evidence, to show his intention in having the deeds executed.

3. That the testimony of Richards in relation to the consideration was admissible as part of the res gestœ.

4. That the testimony of N. Lloyd and F. B. Groff was irrelevant and inadmissable.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This suit was brought by the appellants for the purpose of setting aside two deeds, the first, from Abraham Groff and Susan, his wife, to Amon Richards, and the other from Amon Richards and wife to Susan Groff, wife of said Abraham Groff.

The facts in this case are as follows: On the 28th of April, 1858, Abraham Groff being seized in fee of the lands described in the two deeds above referred to, applied to Amon Richards, to prepare a conveyance from himself to his wife,

Susan Groff. Richards advised him, that he could not convey the property directly to his wife, and that it had better be done through the intervention of a third person. Under Abraham Groff's instructions, Richards prepared the aforesaid deeds, and on the 28th of April, 1858, the deed from Abraham Groff and wife to Amon Richards was executed, and on the 29th of April 1858, Amon Richards and wife executed a deed to Susan Groff for the same land which had been conveyed to him the day before. On the same day the deed last named was executed, Susan Groff executed a will in form to pass real estate, devising said land to her husband, Abraham Groff, during his natural life, and after his death, in fee to her son, Edwin Rohrer, the appellee in this cause. Abraham Groff, her husband, consented in writing to this will of his wife. Susan Groff died before her husband, and in April, 1862, Abraham Groff died, having executed a will, in which, among other things, he directed that proceedings should be taken to set aside the two deeds above mentioned.

The bill alleged that the deeds were procured by fraud and undue influence, and that by a mistake of Richards a larger interest had been conveyed to Susan Groff than was intended by her husband; and prayed that the deeds be cancelled, and that Edwin Rohrer be decreed to hold the property subject to a resulting trust in favor of the devisees of Abraham Groff.

The other facts are sufficiently given in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*Arthur W. Machen* and *A. F. Musselman,* for the appellants.

Abraham Groff did not intend to convey an *immediate* interest to his wife, nor did he mean that she should ever take the fee. His assent to the will of his wife was merely formal,

without consideration, and done under the advice and direction of Richards.

Courts of Equity grant relief in cases of mistakes in writings, whether made by both or only by one of the parties, by reforming the writings or rescinding them, and whether the instrument of conveyance or contract, be executed, or executory, of realty or personalty, within or without the Statute of Frauds. Parol evidence is admitted to prove such mistakes. 1 *Greenl. Ev.*, sec. 296, (*a ;*) 3 *Greenl. Ev.*, secs. 360, 362, 363; *Wycht vs. Greene,* 11 *Georgia,* 169, 170, 171.

Where, by mistake of the draftsman as to fact or law, the written instrument does not fulfil the intention of the parties previously ordering it, or violates said intention, equity will correct the mistake so as to produce a conformity to the agreement. 1 *Story's Eq.,* sec. 115; *Wake vs. Harrop,* 1 *Hurl. & C. Ex., Ch.* 202, 206; *Heacock vs. Fly,* 14 *Penn.,* 541.

Where a solicitor in drawing a deed exceeds his instructions by mistake, equity will reform the deed, and put the parties in the same situation as before the mistake was made. *Walker vs. Armstrong,* 8 *D. M. & G.,* 531, 542, 544; *Cook vs. Husbands,* 11 *Md.,* 492, 510, 511; *Langley vs. Brown,* 2 *Atkyns,* 195; *Wesley vs. Thomas,* 6 *H. & J.,* 24, 28; *Broughton vs. Hurtt,* 3 *De G. & J.,* 501; *Saxon Life Ass. Co.,* 2 *John & Hem.,* 408, *in Re.*

The declarations of Abraham Groff and his will were admissible in evidence, after the death of himself and wife, to show his dissatisfaction - with the deeds, and so-called will of his wife, and that the true legal effect of them was not explained to, and understood by him, at the time of their execution. *Phillipson vs. Kerry,* 32 *Beavan,* 628.

Where a settlement is not shown to carry out the intention of the settlor, who executed it in ignorance of its legal effect, a Court of Chancery will order it to be cancelled. *Lister vs. Hodgson, L. R.,* 4 *Eq.,* 30; *Wollaston vs. Tribe, L. R.,* 9 *Eq.,* 44; *Forshaw vs. Welsby,* 30 *Beav.,* 243; *Coutts vs. Acworth, L. R.,* 8 *Eq.,* 558; *Phillipson vs. Kerry,* 32 *Beav.,* 628.

Upon the execution of the deed from Groff to Richards, without consideration, a trust instantly resulted in favor of the grantor. For " where the legal estate in lands is conveyed to a stranger without any consideration, there arises a resulting trust to the original owner ; in conformity to the old doctrine, that where a feoffment was made without consideration, the use resulted to the feoffor." 1 *Cruise Dig. Tit. XII, ch.* 1, *sec.* 52 ; *Grey vs. Grey,* 2 *Swanst.,* 598; *Attorney General vs. Wilson,* 1 *Cr. & Ph.,* 22 ; *Lady Tyrrell's case, Freem.,* 304 ; *Hicksam vs. Witham, Freem.,* 308 ; *Hayes vs. Kingdome, Vern.* 34.

Richards, being thus seized in trust for Abraham Groff, could not convey the *equitable fee,* which remained in Groff undisposed of to the time of his death.

It was competent to show the absence of consideration from each of the two deeds in question. Parol evidence is always admissible to establish a *resulting trust. Dryden vs. Hanway,* 31 *Md.,* 254 ; *Greer vs. Baughman,* 13 *Md.,* 257 ; *Dorsey vs. Clarke,* 4 *H. & J.,* 556 ; 1 *Cruise Dig. Tit. XII, ch.* 1, *sec.* 53 ; *Carr vs. Hobbs,* 11 *Md.,* 293, 294 ; *Childers vs. Childers,* 1 *De Gex & Jones,* 482.

*William S. Keech,* for the appellee.

The evidence excepted to by the appellee is inadmissible, because declarations subsequent to the execution of the deed cannot be given in evidence to impeach it. *Cooke vs. Cooke,* 29 *Md.,* 538 ; *Powles vs. Dilley,* 9 *Gill,* 222, 234 ; 1 *Greenl. on Ev., sec.* 180 ; *Hill on Trustees,* 103, 112.

And also, because the evidence as to the intention of the grantor must be confined to the time when the deed was executed. *Adams' Eq.,* 102 ; *Murless vs. Franklin,* 1 *Swans.,* 13 ; *Grey vs. Grey,* 2 *Swans.,* 594 ; *Sidmouth vs. Sidmouth,* 2 *Bea.,* 447 ; *Mutual F. I. Co. vs. Deal,* 18 *Md.,* 26 ; *Hill on Trustees,* 94, *notes* 97 *and Y; Finch vs. Finch,* 15 *Vesey,* 51 ; 1 *P. Wms.,* 112 ; *Cartwright vs. Wise,* 14 *Ill.,* 417.

This is not the case of a resulting trust ; resulting trusts are only of three kinds—1st. Where, upon a purchase of pro-

perty, the conveyance of the legal estate is taken in the name of one person, while the consideration is given or paid by another, the parties being strangers to each other. · *Hill on Trustees*, 91; 2 *Story's Eq. Juris.*, 1196–1206; *Young vs. Peachy*, 2 *Atkyns*, 254; *Adams' Eq.*, 31; *Sewell vs. Baxter*, 2 *Md. Ch. Dec.*, 447 *and S. C.*, 3 *Md.*, 334; *Mutual Ins. Co. vs. Deal*, 18 *Md.*, 26.

2d. Where there is a voluntary conveyance without any trust being declared. *Hill on Trustees*, 106.

But it is by no means the rule that where a voluntary conveyance is made, a trust shall arise by implication. *Hill on Trustees*, 106; *Saunders on Uses*, 227; *Dyer vs. Dyer*, *White's Eq. Cas.*, 65 *Law Lib.*, 67; *Young vs. Peachy*, 2 *Atkyns*, 256; 2 *Stor. Eq. Juris.*, 1202, 1204.

And the donee need not bring proofs to keep his estate, but the plaintiff must bring proofs to take it from him. *Hill on* Trustees, 107; *Cook vs. Fountain*, 3 *Swanston*, 590.

3d. Where there is a disposition of property upon trusts which are not declared, or are only partially declared, or fail. *Hill on Trustees*, 113.

The evidence to prove a resulting trust must be clear and positive. *Adams on Equity*, 33, *n.*; *Sewell vs. Baxter*, 2 *Md. Ch. Dec.*, 447, *and* 3 *Md.*, 334; 2 *Sugden on Vendors and Purchasers*, 395, 911, *Ed. of* 1851; *Hill on Trustees*, 95; *Farringer vs. Ramsey*, 2 *Md.*, 365.

The evidence to prove a resulting trust must be stronger after the death of the grantee. *Adams on Equity, side-paging* 33, *note and cases cited; Unitarian Society vs. Woodbury*, 14 *Maine*, 281; *Neill vs. Keese*, 5 *Texas*, 23; *Harden vs. Harden*, 2 *Sandf., Ch.* 17; *Harrisburg Bank vs. Tyler*, 3 *Watts and Sargent*, 373.

The presumption of resulting trusts may be rebutted in various ways. *Botsford vs. Burr*, 2 *John., Ch.* 405; *Page vs. Page*, 8 *N. H.*, 189; *Baker vs. Viney*, 30 *Me.*, 126; *Elliott vs. Armstrong*, 2 *Blackf.*; 199; *McGuire vs. McGowan*, 4 *Desaussure*, 487; *Sewell vs. Baxter*, 2 *Md. Ch. Dec.*, 447, *and* 3 *Md.*,

334; *Adamson Equity*, 34; *Hill on Trustees*, 96, *and note* 2 *on same page ; Dow vs. Jewell*, 1 *Foster*, 470.

A purchase in the name of a wife or child will be considered an advancement until the contrary is proved. *Livingston vs. Livingston*, 2 *John. Ch.*, 537 ; *Sampson vs. Sampson,* 4 *S. & R.*, 329; *Taylor vs. James*, 4 *Dessau.*, 1 ; *Partridge vs. Havens*, 10 *Paige*, 618 ; *Knouff vs. Thompson*, 16 *Penn. St.*, 357 ; *Dudley vs. Bosworth*, 10 *Humph.*, 12 ; *Taylor vs. Taylor*, 4 *Gilm.*, 303 ; *Adams on Eq.*, 101 ; *Mutual Ins. Co. vs. Deal*, 18 *Md.*, 26 ; 2 *Sugden*, 399 ; *Hill on Trustees*, 97, 98, 101, 103 ; *Murless vs. Franklin*, 1 *Swanst.*, 17.

Upon the question of fraud, mistake and undue influence, etc., see *Adams' Eq.*, 170, 171, 176, 184.

STEWART, J., delivered the opinion of the Court.

The bill was filed in this case, to vacate certain deeds, upon the ground of undue influence exercised over the grantor, and mistake on his part as to the true character and effect of the instrument.

Exceptions were taken to portions of the testimony adduced, which will be disposed of in the progress of this opinion.

There is no doubt "wherever a person is entrapped into the execution of an instrument through a conspiracy, or combination for that purpose; or by surprise, oppression, intimidation, or any other practice at variance with fair dealing, he is entitled to equitable relief." *Hill on Trustees*, 145, 146, (*margin.*)

Judge STORY, in his *Eq. Juris., sec.* 151, commenting upon the various distinctions, where Courts of Equity grant relief, in cases of mistake, extracts the principle that " the general ground that mistake or ignorance of facts in parties, is a proper subject of relief only when it constitutes a material ingredient in the contract of the parties, and disappoints their intention by a mutual error or where it is inconsistent with good faith. But where each party is equally innocent, and

there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria.*"

There is no proof in the record that any undue or fraudulent influence was exerted over the grantor in this case; and according to the testimony, he seems to have been a man fully capable of comprehending the transaction in which he was engaged, and to have very clearly expressed his purposes in regard to the conveyance to be made to his wife, the grantee. The two deeds, the one from Groff to Richards, and the other from Richards and wife to the grantee, the wife of Groff, executed by the parties, conveying the property in dispute to the wife, and her will, made about the same time, in pursuance of the purposes of the parties, Groff and wife, appear to have completed the transaction the husband and wife had in view, and should be considered as constituting component parts thereof.

They both appear to have fully understood the purport of the arrangement; and Richards, the scrivener employed, prepared the deeds and will, strictly according to their wishes, and they were read over to the parties, grantor and grantee, and they were fully satisfied.

It seemed to have been an arrangement, designed on the part of Groff, the grantor, and the owner of the property, to have the same conveyed and vested in his wife, and for her benefit, and for no other purpose.

There being no proof of fraud or undue influence, the only question to be considered is, whether, under the circumstances and growing out of the transaction, there was any resulting trust to the grantor?

There is no question, a resulting trust may be implied or presumed from the supposed intention of the parties, and the nature of the transaction; or it may be raised independently of any such intention, by equitable construction and the

operation of law—they are known in either case as constructive trusts, and are exempted from the operation of the eighth section of the Statute of Frauds.

Where upon a purchase of property, the conveyance of the legal estate is taken in the name of one person, whilst the consideration proceeds from another, the parties being strangers to each other, a resulting trust arises by virtue of the transaction, and the grantee will be but a trustee for the party from whom the consideration proceeds. *Hill on Trustees,* 91, 92; *Story's Eq. Juris.,* sec. 1201.

This doctrine applies only to *purchases;* and if a person in actual possession of property make an actual *gift* or *transfer* of it to another, as a general rule the presumption of a resulting trust will not arise. "Resulting trusts of this nature are strictly confined to cases where the purchase has been made in the name of one person, and the consideration paid by another." *Hill on Trustees,* 93–96.

The doctrine of the Courts, as to trusts, has been well stated in the old, but great case of *Cook vs. Fountain,* which affords a landmark in these cases, and may always be safely referred to, and is this, that "all trusts are either, first, express trusts, which are created by act of the parties, or implied trusts, which are created by act or construction of law; again, express trusts are declared either by word or writing; and these declarations appear either by direct and manifest proof, or violent and necessary presumption. These last are commonly called presumptive trusts; and that is, when the Court, upon consideration of all circumstances, presumes there was a declaration, either by word or writing, though the direct proof thereof be not extant. In the case in question, there is no pretence of any proof that there was a trust declared, either by word or in writing; so the trust, if there be any, must either be implied by the law, or presumed by the Court. There is one good, general and infallible rule that goes to both of these kind of trusts; it is such a general rule as never deceives—a general rule to which there is no excep-

tion, and that is this: The law never implies, the Court never presumes a trust but in case of absolute necessity. The reason of this rule is sacred; for if the Chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the Lord Chancellor to construe or presume any man in England out of his estate; and so at last, every case in Court will become *casus pro amico.*"

According to these well settled and established principles governing Courts of Equity, we discover no facts in this case upon which a resulting trust to the grantor can be founded. On the contrary, they very clearly shew that Groff, the grantor, designed, and has carried into execution, that the grantee, his wife, should have the beneficial use of the property conveyed to her, with power to dispose of it, as she did by her will, and that it did not enter into his conception to make her a trustee of the same for his benefit.

" It has been the settled doctrine that a voluntary conveyance, or assignment, of real or personal estate, if duly executed and acted upon, will be valid and binding upon the original owner, and subsequent volunteers claiming under him." *Hill on Trustees*, 106.

In a Court of Equity certainly, this was a transaction between husband and wife, not between strangers; the grantor was under a moral obligation to make provision for the comfort, support and maintenance of the wife; and the principles governing in the case of strangers do not apply. Her relation was similar to that of a child to the parent in its analogies, and is to be treated accordingly. The relation of these parties, husband and wife, if there were no proof of a valuable consideration in the deeds, furnished ground of meritorious consideration, to prevent the implication that the husband merely intended that she should be a trustee of the property conveyed, for his benefit, and it would be against any just principle of equity to imply a constructive trust under such circumstances.

To sustain such a view, in the place of a Court of Equity aiming to effectuate the honest purposes of parties, it would in truth pervert their meaning and defeat the objects the parties had in contemplation.

*Hill on Trustees,* 97, 98, very clearly recognizes the distinction. He says, " the rule respecting resulting trusts is not of universal application. If the person in whose name the conveyance of property is taken, be one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption of trust arises from the fact of the payment of the money; but on the contrary, the transaction will be regarded *prima facie* as an advancement for the benefit of the nominee. This doctrine of advancement obtains equally in the case of a purchase by a husband in the name of his wife." This exception is made in cases where the principle of a resulting trust applies; that is, as we have stated, where the purchase of property is made; and yet no such constructive trust in such case will be fastened upon a wife.

But this was a very different case from that of one person advancing money and another taking the deed for the property purchased. It was a transaction, as we comprehend it, designed to make provision for the wife, and whether it is to be considered as simply a voluntary conveyance of the property without any consideration, or, as founded on valuable or meritorious consideration, her rights are not to be destroyed by construction in a Court of Equity. See *Mutual Ins. Co. vs. Deale,* 18 *Md.,* 45.

In *Adams' Equity,* 285, treating of the subject of meritorious or imperfect consideration, thus plainly is its nature explained : " The doctrine of meritorious consideration originates in the distinction between the three classes of consideration on which promises may be based; viz., valuable consideration, the performance of a moral duty, and mere voluntary bounty. The first of these classes alone entitles the promisee to enforce his claim against an unwilling promis-

sor; the third is for all legal purposes a mere nullity until actual performance of the promise. The second is termed meritorious, and is confined to the three duties of charity, of payment of creditors, and of maintaining a wife and children; and under this last head are included provisions made for persons, not being children of the party promising, but in relation to whom he has manifested an intention to stand in *loco parentis*, in reference to the parental duty of making provision for a child."

"It may therefore be stated as the clear result of the authorities, that where a person, being a stranger in blood to the donor, and *a fortiori* if connected with him by blood, is in possession of an estate under a voluntary conveyance, duly executed, the mere fact of his being a volunteer, will not of itself create any presumption that he is a trustee for the grantor; but he will be considered entitled to the enjoyment of the beneficial interest, unless that title is displaced by sufficient evidence of an intention on the part of the donor to create a trust: and, as was observed by the Lord Chancellor in the case of *Cook vs. Fountain*, 3 *Swanston*, 591, he need not bring proof to keep his estate, but the plaintiff must bring proof to take it from him." *Hill on Trustees*, 107.

"A grantor may fairly intend to give away his property, and if he were never allowed to do so effectually, it would produce mischief equally great with those which the Statute of XIII Elizabeth, ch. 5, was intended to prevent." *Adams on Equity*, 147; see *Hays vs. Hollis*, 8 *Gill*, 369.

Besides, the grantor here seems to have considered himself under a legal obligation, independent of the meritorious consideration to which we have adverted, to re-pay his wife for claims upon him, according to his own statement, on account of her release of her interest in property that he had sold and conveyed.

He had the right without any such consideration, to make a voluntary conveyance of the property to her for her beneficial enjoyment of the same, absolutely in fee, and if that was

his purpose without qualification or reservation of any interest to himself further than expressed in the instrument, there can be no constructive trust.

"Where any valuable consideration is expressed in the deed itself, the Court will not look narrowly into the consideration. Where the conveyance is expressed to be for a valuable consideration, parol evidence cannot be received to shew that the purchaser was intended to be merely a trustee for the vendor." *Hill on Trustees*, 112. In a case of accident, mistake or fraud, parol proof may be resorted to for the purpose of establishing a resulting trust in property real, when conveyed. The rule is operative in equity, as well as at law, that parol evidence cannot be admitted to contradict, qualify, extend, or vary a written instrument, except in such cases. It is allowed to rebut a presumption, or an equity arising out of written instruments, not to repel the proper construction of the instrument, but only the rules of presumption which Courts have created, or applied to cases uncertain, in order to effect the true intent of the parties. *Story's Eq. Jur.*, sec. 1531. "Where a case of fraud is made by the bill, parol evidence will be admitted for the purpose of establishing the case; even though the effect of the evidence be to alter or vary a written instrument, and although the benefit of the statute be insisted upon by the defendant. For as was said by Lord Thurlow, "The moment you impeach a deed for fraud, you must either deny the effect of fraud on a deed, or you cannot but be under the necessity of admitting parol evidence to prove it." And the same rule prevails where relief is sought on the ground that, through mistake, surprise, or accident, the instrument is framed contrary to the intention of the parties. "How," observed Lord Hardwick, in *Baker vs. Paine*, 1 *Vesey*, 157, "can a mistake in an agreement be proved but by parol evidence?" However, even in the case of fraud, parol evidence is not regarded with favor, and the Court will not act upon it, if it be not strong, irrefragable evidence; or if it be contradicted by other testi-

mony. *Hill on Trustees*, 166, 167; see *Greer vs. Baughman*, 13 *Md.*, 269.

That is, as we understand the doctrine, the proof must be clear of all reasonable doubt; or as Judge STORY, in his *Eq. Juris.*, sec. 152, expresses the same view: " If the mistake is made out by proofs entirely satisfactory, equity will reform the contract; but if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy."

The declarations of the parties to the deed, made cotemporaneously with the transaction in regard to the same, are admissible, merely as a part of the *res gestæ*, for the purpose of explaining the intention of the parties, and the character of the instrument, (*Cook vs. Cook, Ex'rs*, 29 *Md.*, 550;) therefore the will of Abraham Groff, which was simply his declaration as a grantor, was inadmissible, being long subsequent to the execution of the deeds in question.

But the testimony of Amon Richards, which was objected to by the appellees upon the ground that it undertook to prove the absence of a valuable consideration which the deeds contained, being but a part of the *res gestæ*, was admissible.

When the deed was impeached, as not being in accordance with the intention of the grantor, and the respondent relied upon the evidence of Richards, objected to by the complainant, for the purpose of confirmation of the instrument, the declarations of the grantor thus introduced to sustain and support the claim of the grantee under the deed, were admissible. *Hill on Trustees*, 103.

The exceptions of the appellant were properly overruled, and those of the appellee well taken, except as explained above.

Nimrod Lloyd and Francis B. Groff's testimony was immaterial and not relevant in any aspect of the case, and therefore not admissible, and properly excepted to.

From a consideration of the whole case, we discover no grounds for the allegation of undue influence, nor the charge of mistake on the part of the grantor, nor any evidence from which an implied or resulting trust can arise, according to any principles governing Courts of Equity, of which we are aware; and therefore the allegations of the original and supplemental bills are not sustained, and the Circuit Court committed no error in dismissing the bill of complaint.

*Decree affirmed.*

(Decided 14th March, 1872.)