MONROE COUNTY.—HON. J. A. ADLINGTON, SURRO-
GATE.—March, 1884.

## SMITH v. COLLAMER.

*In the matter of the judicial settlement of the account
of JOHN B. COLLAMER, as executor of the will of
ISAAC SMITH, deceased.*

The inventory of a decedent's estate is, upon the personal representatives'
accounting, *prima facie* evidence of the value thereof, and of the
items composing the same.

Under Code Civ. Pro., § 1833, which provides that, in an action or special
proceeding wherein the question in issue is whether the estate of a
decedent has been administered, and the inventory thereof is given
in evidence, "the executor or administrator shall not be charged
with a demand or right of action, included in the inventory, unless
it appears that the same has been collected, or might have been col-
lected with due diligence," the diligence required is such as a good
business man would exercise in the management of his own property
under like circumstances.

Testator, at the time of his death, held a promissory note, the maker of
which was then insolvent and so remained. The note was classified
by the appraisers as "not good," and no value was attached to it by
them. Though requested to sue thereon, the executor held it with-
out offering to turn it over to the persons interested, and without
taking any steps to collect it, except to call on the maker once. The
latter then stated that he would pay as soon as he could, though there
were circumstances which rendered the note non-collectible. It be-
came outlawed.—

*Held*, that the executor was not liable for the amount thereof.

Harrington v. Keteltas, 92 *N. Y.*, 40—distinguished.

MOTION to confirm report of referee upon judicial
settlement of executor's account. The facts appear suf-
ficiently in the opinion.

J. A. STULL, *for executor.*

JOHN VAN VOORHIS, *for Mrs. Smith.*

THE SURROGATE.—There were several matters in dispute between Mrs. Smith, the widow and one of the legatees of the testator, and the executor, which were warmly contested before the referee, but the parties on this motion acquiesce in the findings and conclusions of the referee, except in regard to the Thomas Shay note, and in the computation of interest.

*First.* The testator, at his death, which occurred in December, 1876, held said note, which was for the sum of $109.53, and was dated January 19th, 1874. The report of the referee has the following statement of facts in reference to such note :

It was inventoried as "not good," from what information the appraisers were able to obtain. The proof, so far as it goes, shows that Shay was not responsible, and that a judgment would not have been collectible. The widow and residuary legatees all knew the circumstances, as well as the executor, and no request was made to incur expense on account of it. He tried to collect it by voluntary acts, but failed. Further on, in his report, the referee says : " I have rejected the Shay note, in the computation of interest, as none has been received upon it, and leave that to be adjusted when the question of liability of the executor for it be determined." He has held it without offering to turn it over to the parties interested, and without taking any steps to collect it, except to call upon Mr. Shay once. The note is inventoried as "not good," and the amount of it is not carried out in footing up the assets. The widow, Mrs. Smith, testifies that she had talks with the executor about the note, and twice requested him to sue it. He did not, but kept it, and allowed it to out-

law. "My conclusion from the facts and findings above, touching the Shay note, is that it should be charged against the executor on account of his laches.

| | | | |
|---|---|---|---|
| The amount of the note is | - | - | - $109.53 |
| Interest to December 8th, 1876, | - | | 32.04 |
| Principal sum, | - | - | - $131.57 |
| Interest to December 8th, 1883, | - | | $53.67." |

For these amounts of principal and interest, the report charges the executor.

It becomes necessary, in view of these statements contained in the report of the referee, to carefully examine and collate the evidence bearing upon the subject of this note, to ascertain what disposition should be made of the matter.

The following is all the evidence appearing in the referee's minutes: Mary A. Smith, the widow, testified: "I used to know Thomas Shay. He was about thirty years of age. His father was reputed to be a man of means. I never had the Shay note. That did not grow out of the auction. I requested him twice, to get it into a judgment, not to neglect it."

John B. Collamer says: "I went, October 17th, 1877, about fourteen miles to see if he (Shay) would pay the note, or if I could collect it. He said he would try and pay a little on it, that he was poor, had lost his property, but would pay as soon as he could. Shay said there were circumstances by which the note was not collectible, but that he would pay it as soon as he could. Shay's general reputation was that he was not worth anything. I talked with Mrs. Smith about it, whether it was best to sue it. I thought it was not."

And, on the cross-examination : "I never paid any money for counsel on the Shay note. Cannot say that I counseled with any lawyer. Shay was a young man, about thirty-five. He was a day laborer, working around the depot at Kendall. I do not know what he did. I suppose he kept house. I did not know his father. Do not know whether he is living. I heard that he was living in Hamlin. I do not know who told me he was living in Hamlin. I do not know anything about his father's means. Knowing the circumstances, I should have done just as I did, if I knew that he was going to inherit some property."

The inventory, which was put in evidence, shows that the note was mentioned among the effects of the testator, but was stated to be "not good," and no value was put upon it, nor was the amount of it included in the footing up of the assets.

We have, therefore, a note taken by the testator in his lifetime, the maker of which, at the death of the testator was insolvent, and, so far as appears, has so remained ever since. Such note was classified by the appraisers as "not good," and no value was attached to it by them. There were also circumstances, the maker states, which would make the note not collectible.

Upon these facts, I do not think the executor is liable for the non-collection of this note, or that he can be charged with the amount of it. "The inventory is *prima facie* evidence of the value of the property, as well as of what assets have come into the hands of the executor" (Redfield's Law and Pr. of Surrogates' Courts [*2nd ed.*], *422*). " The inventory fixed the *prima*

*facie* value of the estate, and the items composing it, and parties contesting on final settlement of the accounts have the burden of proof in attempting to surcharge it, as to the value of items included therein, or items omitted" (McClellan's Ex'r. & Surrogate [*2nd ed.*], *67*).

"The contestant may further allege that claims of the deceased, charged as bad and not collectible, were good. When the claims charged as bad and not collectible were inventoried as doubtful or bad, to charge the executor, the contestant must show that he knew they were collectible and neglected the collection, but where the claim was inventoried as good, the executor charging it as bad, must prove it to be so" (Id., *106, 107*).

"The general rule is that all debts in the inventory not designated as desperate shall be accounted assets in the hands of the executor or administrator, and, in order to escape such accountability, he must show that they are desperate" (Schultz v. Pulver, *11 Wend., 365*).

In the proceeding under consideration, the contestant gave no evidence whatever to show that the note inventoried "not good" was, in fact, collectible, or that the maker had ever been solvent since the testator's death; while there is affirmative proof on the part of the executor that Shay was poor, a common day laborer without property, but who expressed a willingness to pay, when he should have the means.

But further, section 1833 of the Code of Civil Procedure provides that, in a special proceeding of this character, an "executor or administrator shall not be charged with a demand, or right of action, included in the inventory, unless it appears that the same has been

collected, or might have been collected, with due diligence.'' The due diligence which an executor is bound to use in such case is such diligence as a good business man would exercise in the management of his own property under like circumstances (Moore's Estate, *1 Tucker, 41*).

The executor, in the present case, although the note was inventoried as worthless, attempted to collect it, and called personally on the maker for that purpose. He found him poor, and, as the referee says, '' Shay was not responsible and a judgment against him would have been non-collectible.''

It is not the duty of an executor to attempt the collection of (bad) debts, and thereby incur, as he necessarily would do, costs and attorney's fees without any benefit to the creditors or heirs (Succession of Pool, *14 La. Ann., 677*).

In determining whether debts to a testator, and which came into the hands of the executor, are assets to be accounted for by him, regard must be had to their character, whether they are sperate or desperate, and if the former, whether they have been collected, or lost by default of the executor (Cooke v. Cooke, *29 Md., 538*).

The note was regarded by the appraisers as bad or desperate, and this they indicated by inventorying it as not good, and omitting to give it any value.

The burden of proof was on the contestant to show that the appraisers' estimate was not correct, and that the note was collectible, in whole or in part, and, therefore, had some value.

This was not done, while on the part of the executor

it was shown that, owing to the insolvency of the maker, the note could not be collected, either by voluntary payment or by operation of law. It is claimed, on the part of the contestant, that, as the father of Shay was a man of means, the executor was negligent in not putting the note into judgment, but the father of Shay may have outlived him, or he may by will leave all his estate to others.

The case of Harrington v. Keteltas (*92 N. Y., 40*), cited to sustain the referee in charging the executor with the amount of this note was an action against an executor for knowingly allowing the statute of limitations to run against a valid and subsisting claim of his testator against a third person who was of sufficient pecuniary ability to pay the same during all the time it was enforceable against him (see opinion, *p. 50*). The court properly held the executor's estate liable for his wrongful neglect of duty.

The case is not in conflict with the authorities to which I have heretofore referred, and in which similar principles are stated.

*Second.* I do not see that the plan adopted by the referee in the computation of interest is unfair, or that it works any harm to the executor. There is an error of $33.75, in the computation of the commissions chargeable to the principal fund. The one quarter per cent. on three quarters of $9,000 is stated as $118.12. It should be $84.37.

The report of the referee may be modified by striking therefrom the portion charging the executor with the Shay note and the interest thereon, and by correcting the above mentioned error in the computation of

commissions; and, as so modified, the report is confirmed, and a decree may be entered accordingly.